IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA
Plaintiff

vs

3- REYNALDO GONZALEZ-RIVERA
Defendant

CRIMINAL 03-220-03  CCC

**ORDER**

On July 8, 2004, defendant Reynaldo González-Rivera filed a Statement of Objections to Presentence Investigation Report (docket entry 131) in which he challenged the application of upward adjustments under U.S.S.G. § 2D1.1(b)1) for the possession of a firearm in relation to a drug trafficking crime and U.S.S.G. § 3C1.2 for having created a substantial risk of serious bodily injury to another person in the course of fleeing by discharging a firearm against law enforcement officers. Defendant alleged therein that the conduct supporting the adjustment under U.S.S.G. § 2D1.1(b)1) was submitted to the jury as part of Counts Four and Six, for which he was acquitted, and could not be used to apply said adjustment, while the conduct supporting the adjustment under U.S.S.G. § 3C1.2 was never placed before the jury and could not be considered either for sentencing purposes. In the alternative, defendant also alleged that application of the adjustment under U.S.S.G. § 2D1.1(b)1) would bar the application of the adjustment under U.S.S.G. § 3C1.2 since both were based on the same conduct.

Defendant's objections were held in abeyance while the Supreme Court entertained the constitutionality of the U.S. Sentencing Guidelines in United States v. Booker, 125 S.Ct. 738 (2005). On March 11, 2005, after the Supreme Court decided Booker, we addressed defendant's objections and explained that once the Sentencing Guidelines became advisory as a result of said case's Remedy Opinion, judicial fact-finding to apply Guideline adjustments did not encounter any Sixth Amendment difficulties since application of those adjustments would not serve to increase the statutory maximum sentence, which would be equivalent to the

maximum lawful sentence under the Apprendi/Blakely/Booker line of cases. We then proceeded to note defendant's challenge to the two above-mentioned guideline adjustments without expressly ruling on their applicability and advised him that his sentence would be based not only on the Guidelines but also on the sentencing factors established in 18 U.S.C. § 3553(a). See docket entry 158. Defendant was sentenced on April 5, 2005 to serve concurrent terms of 210 months of imprisonment as to each count of conviction (docket entry 166).

Defendant appealed, and the Court of Appeals remanded for resentencing upon finding that we had failed to provide a reasonable explanation for the sentence imposed. As under United States v. Jiménez-Beltre, 440 F.3d 514 (1st Cir. 2006) (decided after we imposed sentence on defendant) we are required to engage in a "sequential determination of the guideline range," id., at p. 518, which evidently requires that we make specific findings on any objections to the Guideline adjustments applied in the PSR, we proceed to do so here. We note, however, that defendant's objections to the two Guideline adjustments were duly considered before imposing the original sentence as part of our analysis of the relevant sentencing factors established in 18 U.S.C. 3553(a), even if they were not explicitly addressed and disposed of then.

We turn, thus, to defendant's claim that the adjustment under U.S.S.G. § 2D1.1(b)1) may not be applied because it is based on conduct for which defendant was acquitted. Said adjustment is applicable if "a dangerous weapon (including a firearm) was possessed" by defendant. While defendant was charged in the Superseding Indictment (docket entry 50) with using a firearm during and in relation to a drug trafficking crime (Count Four) and being a felon in possession of a firearm (Count Six), he was acquitted on both counts. See docket entry 112. Still, in United States v. Watts, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), the Supreme Court held "that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." Id., 519 U.S. at 156, 117 S.Ct. at 638. In Justice Stevens' majority opinion in Booker, he stated that "[n]one of our prior cases is inconsistent with today's decision" and specifically discussed Watts, among other cases. Booker,

543 U.S. at 240-41, 125 S.Ct. at 754-55. Thus, Watts' holding appears to have survived Booker, and we must continue to apply it until it is abrogated by the Supreme Court.  In fact, the Court has in no uncertain terms admonished lower courts before that they should continue to follow directly controlling precedent even where that decision appears to rest on reasons rejected in another line of decisions. See Agostini v. Felton, 521 U.S. 203, 237-38, 117 S.Ct. 1997 (1997).

In addition, "[j]udicial authority to find facts relevant to sentencing by a preponderance of the evidence survives [United States v. Booker, 543 U.S. 220 (2005) ]." United States v. García, 413 F.3d 201, 220 n. 15 (2d Cir.2005).  Hence, we may still consider the conduct for which defendant was acquitted in applying a Guideline adjustment as long as said conduct was proven by a preponderance of the evidence.  See United States v. Gobbi, 471 F.3d 302, 314 (1st Cir. 2006) ("... acquitted conduct, if proved by a preponderance of the evidence, still may form the basis for a sentence enhancement.").

Here, the fact that defendant possessed a firearm during the drug-trafficking crime for which he was convicted  was proved by the government by a preponderance of the evidence presented at trial.  Agent Nelson González-Rodríguez, one of the Puerto Rico Police officers who participated in the surveillance of a residence in Rio Grande which culminated with defendants' arrests, testified that once defendants were alerted of the police presence and started running away from the residence, an exchange of gunfire took place.  The fleeing defendants eventually fell into a hole in the ground, where they were arrested.  González-Rodríguez, who was the arresting officer, seized from defendant González-Rivera a loaded silver colored Taurus pistol, which was admitted as Exhibit 7 during the trial.  Based on the testimony of agent González-Rodríguez, which we find entirely credible, we have little trouble concluding that defendant González-Rivera possessed a firearm.  As in the residence from which all defendants fled the law enforcement officers found cocaine and cocaine base, it is evident that the firearm was possessed in relation to a drug-trafficking crime.  Accordingly, the adjustment under U.S.S.G. § 2D1.1(b)1) was properly applied to defendant.

As to the adjustment under U.S.S.G. § 3C1.2 for reckless endangerment during flight,

it was applied to defendant upon the U.S. Probation Officer's conclusion that he "recklessly created a substantial risk or death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." PSR, at p. 6, ¶ 21. The facts relevant to this issue, elicited from the trial testimonies and as summarized by the Court of Appeals in its Opinion, follow:

> As the SWAT team approached the house, [defendant] Jose David Cruz-González, the owner of the house, who was somewhere outside the gate across the driveway in front of the house, ran through the gate toward the house shouting that the police were there. The three co-defendants in the case, [Tomas] García-Carrasquillo, [José] Claudio-García, and González-Rivera, then ran out of the ground-level apartment and joined Cruz-González in fleeing towards the back of the house.
>
> At the back of the house, the four men jumped over a fence and continued to run. Agent Nevárez shouted for the men to stop and told them they were under arrest. The fleeing men and the officers then exchanged gunfire; González-Rivera was shot in the leg. The men continued to run and exchange gunfire with the pursuing police until the four men fell into a large hole in the ground, where they were apprehended and arrested. The three co-defendants were each found with loaded firearms on their persons."

United States v. García-Carrasquillo, 483 F.3d 124 (1st Cir. 2007).

Although it is not clear from the trial evidence whether González-Rivera was one of the defendants who actually fired his pistol while fleeing from the police officers, it was established that he was one of the participants in the drug trafficking offense and actively aided and abetted his co-defendants in their violent flight from their pursuers, thus becoming responsible for the risk created by those who actually shot. U.S.S.G. § 3C1.2, Application Note 5. See also United States v. Harrison, 272 F.3d 220, 223 (4th Cir. 2001) (applying an aided and abetted standard to a § 3C1.2 enhancement). Thus, the adjustment under U.S.S.G. § 3C1.2 is also applicable to defendant.

Defendant, however, has averred that applying the adjustment under U.S.S.G. § 3C1.2 would constitute impermissible double counting in contravention of Application Note 1 to said guideline section, as he claims that the increase in his offense level under §2D1.1(b)1 was based on the same conduct. Nothing is further from the truth. The adjustment under §2D1.1(b)1 was awarded to defendant for his possession of a firearm, while the adjustment under § 3C1.2 resulted from defendants' shoot-out with the police while being pursued by the officers, which

placed others at risk.  Cf. U.S. v. Alicea, 205 F.3d 480, 486 (1st Cir. 2000).  Both adjustments were clearly warranted by the evidence presented at trial, and correctly applied by the U.S. Probation Officer.

For the reasons stated, defendant's objections to the application of upward adjustments under U.S.S.G. §§ 2D1.1(b)1 and 3C1.2 are OVERRULED.

SO ORDERED.

At San Juan, Puerto Rico, on July 2, 2007.

S/CARMEN CONSUELO CEREZO
United States District Judge